## Case No. 5,228.

GARDNER v. GOODYEAR DENTAL VUL-CANITE CO.

[See 21 U. S. (Lawy. Ed.) 141.]

## Case No. 5,229.

GARDNER et al. v. HERZ et al.

[16 Blatchf. 303; 4 Ban. & A. 320; Merw. Pat. Inv. 179; 16 O. G. 1003.][1]

Circuit Court, S. D. New York. May 9, 1879.

1 [Reported by Hon. Samuel Blatchford, Circuit Judge: reprinted in 4 Ban. & A. 320; and here republished by permission. Merw. Pat. Inv. 179, contains only a partial report.]

Andrew J. Todd, for plaintiffs.
Frost & Coe, for defendants.

BLATCHFORD, Circuit Judge. This is a motion for a preliminary injunction, founded on reissued letters patent [No. 7,203] granted to George Gardner, William Gardner and Jane E. Gardner, July 4th, 1876, for an "improvement in chair seats," the original patent [No. 127,045] having been granted to George Gardner and Gardner & Gardner, May 21st, 1872, on the invention of George Gardner. The specification of the reissue states, that the "invention. relates to bottoms for seats, and consists in constructing the said seats of two or more veneers of wood, with the grains crossing each other, the said veneers of wood being glued together by an adhesive substance;" that "veneers, when thus arranged, that is to say, with the grains crossing each other, or diversified, will make a seat which, for durability and economy, will be found to be a very useful improvement;" that the seat may be made "either solid or perforated;" that "the perforated seats are made by boring a round hole, of any design desired;" that "the perforated seats are desirable, as they are ventilated and ornamental;" that "the veneers, with the grains crossed or diversified and glued together, become homogeneous, thus making a solid piece of wood," from which the bottom of the seat is made, "which, when perforated and varnished, is ready for the market;" that "veneers, when thus arranged, that is to say, with the grain running crosswise or in diverse directions, will make a bottom for a seat, which, for economy and durability, will be found to be a very useful improvement;" and that "the bottoms thus made may be left solid, or perforated after some design agreeable to the fancy of the one having them made." The specification also states, that a slight concave configuration may be given to the seat, to add to the comfort of the party using it; and that the bottom thus made is secured to a frame, which surrounds it, and, through the latter, is secured to the frame of the seat. The claims are six in number: "1. As a new article of manufacture, a bottom for a seat, constructed of two or more veneers or thin layers of wood, with the grain of the one layer crossing that of the other, and the whole secured together with an adhesive substance, substantially as set forth. 2. As a new article of manufacture, a bottom for a seat frame, constructed of two or more veneers or thin layers of wood, with the grain of the one layer crossing that of the other, said layers being secured together by an adhesive substance, and having perforations formed therein for the purpose of ventilation or ornamentation, substantially as set forth. 3. The combination of a seat bottom, constructed of two or more veneers or thin layers of wood, with the grain of the one layer crossing that of the other, and the whole secured together by an ad-

hesive substance, with the frame of the seat, substantially as set forth. 4. The combination of a seat bottom, constructed of two or more veneers or thin layers of wood, the grain of the one layer crossing that of the other, and the whole secured together by an adhesive substance, and provided with perforations for the purpose of ventilation or ornamentation, with the frame of a seat, substantially as set forth. 5. As a new article of manufacture, a wooden bottom for seats, provided with perforations for the purpose of ventilation or ornamentation. 6. As a new article of manufacture, a seat bottom constructed of two or more veneers or thin layers of wood, the grain of the one layer crossing that of the other, and secured together by an adhesive substance, said bottom thus formed having a curved or concave configuration on its upper side, substantially as set forth." The defendants make seat bottoms constructed of two or more veneers or thin layers of wood, with the grain of the one layer crossing that of the other, and the whole secured together with an adhesive substance; and there are slots or slits cut through the seat, as long as the length of the seat bottom from front to rear, leaving longitudinal holes of that length, and thus forming ribs or slats, the effect of which is to make the seat bottom yielding and elastic.

A patent was granted to the defendant Mayo, December 26th, 1865, for "improved material for roofing, tubing, tank, wainscotting, boats and other structures." The specification of that patent states, that the invention is an "improvement in the manufacture of material for structures generally." The specification says: "The scale used in the ensuing description consists of a thin layer of wood cut from a board or log and forming a veneer. My invention consists in cementing together a number of these scales or veneers, with the grain of the successive pieces running crosswise or diversely. A number of these scale boards, their surfaces having been previously treated with cement or analogous materials, are so laid together as to cross the grain of the respective pieces, so as to form a firm material for the construction of houses, boats, ships, tanks, floors, pipes, drains, sewers, packing cases, boxes, barrels, sidewalks, cans, pails, tubs, firkins, measures, cheese boxes, trunks, valises, dry docks, canal locks, mill and factory flumes, masts, spars, outside covering and inside finish of houses, stores, shops, depots and warehouses, fences, covering of piles, railroad cars, railroad and suspension bridges, railroad tracks and sleepers, wagons, carriages and carts, bedsteads, sacking, mattresses and covering of beds, sofas and sofa bedsteads, divans, lounges, chairs and settees. In house architecture, the weather boarding and inside finish of the house may consist of this material, and in vessels of every kind it may be made the covering or lining of the ribs

or skeleton, or, in some instances, may form the body of the articles, as, for instance, in pipes, in which the layers are united by an impervious cement, and so applied to each other that the grain of one will be lengthwise of the pipe, of another will be at the right angles to the former, and, if others are added, may be spirally around it. By the well-known processes of wet and dry heating, such a pliability may be given to the layers as to permit them to readily assume various figures, or be laid upon irregular objects, with the grain of the respective pieces running diversely, so as to prevent splitting. I cannot pretend to anticipate all the various uses to which this scale board may be applied, but, suffice it to say, that, by the means employed, I am enabled to make a very strong and light structure, of whatever shape it may be, or for whatever purpose it may be designed. It is capable of being made an effective and elegant substitute for the usual covering of the walls of rooms. For flooring it is also available, especially in cases where it is an object to make apartments air-tight, as in ice-houses, fruit chambers and other rooms which it is desired to isolate for any purpose." The claim of the patent is: "The application of scale boards or veneers in layers, the direction of whose grain is crossed or diversified, and which are connected together, forming a material for the construction, lining or covering of land and marine structures." This patent was reissued August 18th, 1868, in eight divisions, on eight separate amended specifications, to John K. Mayo, Andre Cushing and G. B. Cushing. Division E is a reissue for an "improvement in house decorations, furniture, fittings and the like." The specification says: "The invention consists in constructing various house decorations, furnishings and fittings of a plurality of scale boards or thin sheets or veneers of wood, cemented or otherwise firmly connected together, with the several scales or thicknesses so placed that the joints (ends or edges) shall be broken by each alternate layer, and the grain of the wood crossed or diversified, so that they will afford to each other mutual strength, support and protection against checking, splitting, swelling or shrinking. * * * In the chair, fig. 2, the bottom, B, may be formed of a flexible material, made up by the union of two or more thin layers of wood, having the grain crossed or diversified in direction, and united by suitable cement." Various other articles of house decoration, fitting and furnishing are specified, to the construction of which the invention is stated to be applicable. The claim is: "The employment or use of the compound scale board hereinbefore described, in the formation of the specified or analogous structures or articles of house decoration, fitting and furnishing."

What is claimed in the first claim of the Gardner reissued patent is clearly described

in the two Mayo patents, both of which were issued prior to the original Gardner patent. The original Gardner patent claimed, "as a new article of manufacture, a chair seat constructed of veneers of wood with the grain running crosswise of each other, and glued together, all substantially as set forth, and for the purposes specified." The specification stated, that "the seats may be left solid, or perforated after some design agreeable to the fancy of the one having them made," but there was no claim in respect of any perforations. On what ground the patent office granted the claim of the original Gardner patent, or the first claim of the reissued Gardner patent, in view of the original and reissued Mayo patents, it is impossible to conjecture. The only conclusion can be that the Mayo patents were twice overlooked.

The next subject is the perforations. A reissued patent was granted to Isaac P. Tice, as assignee of Austin S. Smith, the inventor, June 27th, 1865, for an "improved chair bottom or back," the original patent having been granted to said Smith, May 25th, 1858. The specification of the reissue describes the making of the bottoms or seats of chairs of perforated sheet metal, and attaching the edges of the sheet of perforated metal to a supporting frame of wood or other stiff material of suitable form, by nails, tacks or other suitable fastenings. It states that the perforations may be of any suitable form, as circular or of a form resembling the reticulations produced by interlacing the strips of cane in a cane bottom; that the sheet metal is not only as good as cane in coolness and in the ventilation it affords to the clothing of persons, but is cheaper and more durable and so much smoother as to be less destructive to wearing apparel. A patent was granted to J. W. Cochran, May 22d, 1866, for a "chair, sofa and car seat." The specification states that the "invention consists in the employment of india rubber or gutta percha enamelled in whole or perforated (open worked) sheets for the seats and backs of chairs, sofas, car seats, carriages and lining thereof and for mattresses;" and that "the material may be attached either by lacing, gluing, cementing, screwing or nailing." The drawing shows a chair seat with circular perforations in it. A chair seat of perforated sheet metal, or perforated enamelled india rubber or gutta percha, has every feature of ventilation and ornamentation, as resulting from the perforations, that the perforated chair seat of the Gardner patent has. The perforations in the Gardner seat are not described as serving any other end than ventilation and ornamentation. In view of the prior perforated seats there was no patentable novelty in perforating a wooden bottom. No claim is made that the defendants have infringed the sixth claim of the Gardner reissue. As to the first five claims there is nothing new or patentable in them, in view of the above references.

The motion is, therefore, denied.